# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| BERNARD TECHNOLOGIES, INC., | ) | Case No. 04-13617(MFW) |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| GEORGE L. MILLER, CHAPTER 7 TRUSTEE | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 06-51017(KG) |
| | ) | |
| SUMNER A. BARENBERG, JANE DOE, JOHN DOE AND XYZ CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## MEMORANDUM OPINION[1]

### I. INTRODUCTION

The Court is issuing its opinion following a trial on June 26, 2008. The adversary proceeding involves the effort of George L. Miller, Chapter 7 Trustee ("Trustee") to avoid and recover pre-petition transfers from defendant. The Trustee has not proceeded against the unnamed defendants. For the reasons explained below, the Court finds in favor of the defendant.

---

[1] This Memorandum Opinion constitutes the findings of fact and conclusions of law required by Federal Rule of Bankruptcy Procedure 7052. To the extent any of the following findings of fact are determined to be conclusions of law, they are adopted, and shall be construed and deemed, conclusions of law. To the extent any of the following conclusions of law are determined to be findings of fact, they are adopted, and shall be construed and deemed, as findings of fact.

## II. JURISDICTION

The Court is exercising jurisdiction pursuant to 28 U.S.C. § 1334. In addition, this is a core matter pursuant to 28 U.S.C. § 157(b)(2)(F), (H) & (O).

## III. FINDINGS OF FACT[2]

### A. BTI

Bernard Technologies, Inc. ("BTI" or "Debtor") filed for bankruptcy protection under Chapter 11 of the Bankruptcy Code on December 24, 2004 ("the Petition Date"). The Court converted the case to Chapter 7 on May 5, 2005, on the motion of the Office of the United States Trustee (D.I. 180). BTI was formed as a Delaware corporation in 1994 and engaged itself in the business of developing proprietary technology to create self-sterilizing materials[3]. By 2002, Debtor was positioned to begin making a profit. Tr. at 9-10. It had several business relationships for selling its products, including McDonald's Corporation (single use, disposable gloves); and it had obtained Food and Drug Administration approvals for the use of its technology for direct food contact and had developed a patent estate. Tr. at 9.

Dr. Sumner A. Barenberg, the defendant ("Defendant"), founded BTI and served as its chief executive officer until May 2002. Tr. at 10. At that time, several BTI directors mounted an insurgency and removed Defendant as CEO. *Id.* BTI's business thereafter dwindled and it found itself defending several lawsuits. Tr. at 12-13. By 2004, BTI was

---

[2] The facts are largely undisputed. It is the conclusions the Court draws which form the bases of the rulings.

[3] Examples of the technology include film to protect food products and packaging for shoes to prevent mold and mildew. Trial Transcript ("Tr. at ___") at 9.

2

unable to pay its debts as they became due and therefore filed for bankruptcy. Tr. at 31-32.

### B. BTAP

BTI owned all of the stock of BTI (USA) II, Inc., which in turn owned all of the stock of Bernard Technologies Asia Pacific Pte, Ltd. ("BTAP"). Pre-Trial Order ("PTO") at 7.

### C. Transfers at Issue

The Trustee challenges the following transfers which Debtor made to Defendant from December 26, 2003, to the Petition Date (i.e., within one year preceding the Petition Date) (PTO at 6 and 8, Px 1).

| Date | Amount | Description |
| --- | --- | --- |
| 5/11/04 | $ 3,938.13 | Expense Reimbursement |
| 7/01/04 | $ 5,252.42 | Loan Repayment |
| 7/08/04 | $ 14,500.00 | Loan Repayment |
| 9/23/04 | $ 5,000.00 | Expense Reimbursement |
| 12/26/03 thru 7/04 | $108,000.00 | Wages |

In addition to the transfers by BTI to Defendant, the Trustee also challenges and seeks to avoid BTAP payments to Defendant, as follows (Px 1):

| Date | Amount | Description |
| --- | --- | --- |
| 6/30/04 | $60,000.00 | None Provided |
| 6/30/04 | $ 127.53 | None Provided |
| 12/14/04 | $30,000.00 | None Provided |
| 12/14/04 | $ 87.09 | None Provided |

Accordingly, the total amount of the transfers at issue is $226,905.17.

3

## IV. DISCUSSION

In his Amended Complaint,[4] the Trustee asks the Court to avoid the payments to Defendant pursuant to 11 U.S.C. §§ 547 (pre-petition preference payments), 548 and 544(b) (pre-petition fraudulent transfers), 551 (preservation of property), and to disallow the claims Defendant filed against Debtor pursuant to 11 U.S.C. § 502(d).[5]

### A. Legal Standard

The Trustee's burden was to prove that each transfer:

(1) was for the benefit of Defendant. 11 U.S.C. § 547(b)(1),

(2) was for or on account of an antecedent debt which Debtor owed before making the transfer. 11 U.S.C. § 547(b)(2) and

(3) was made when Debtor was insolvent, 11 U.S.C. § 547(b)(3), with a presumption that Debtor was insolvent for transfers made within 90 days of the Petition Date. 11 U.S.C. § 547(f).

The Trustee is further required to prove that Defendant received more than he would receive were the case under Chapter 7 and the transfer not been made. 11 U.S.C. § 547(b)(5).

If Debtor met the foregoing burdens of proof, Defendant could successfully defend against avoidance by proving that:

---

[4] Debtor filed the Amended Complaint (D.I. 25) after the Court granted the Defendant's motion for a more definite statement (D.I. 22).

[5] Defendant filed claims against the Debtor which the parties did not address at the Trial and which are therefore not yet at issue.

4

1.      Each transfer was intended to be a contemporaneous exchange for new value given by the Debtor and is in fact a substantially contemporaneous exchange. 11 U.S.C. § 547(c)(1).

2.      Each transfer was in payment of a debt incurred by the Debtor in its ordinary course of business or financial affairs and made according to ordinary business terms 11 U.S.C. § 547(c)(2).

3.      After each transfer, Defendant gave new value to or for the benefit of Debtor not secured by an otherwise unavoidable security interest and on account of which new value the Debtor did not make an otherwise unavoidable transfer to or for the benefit of Defendant. 11 U.S.C. § 547(c)(4).

### B. BTAP Transfers

Defendant challenges the Trustee's entitlement to avoid the transfers from BTAP at issue. The Trustee knew that Defendant would vigorously contest the BTAP transfers on the law and the facts[6], yet did not present a scintilla of evidence in support of a claim which was already suspect, since BTAP is a non-debtor subsidiary. Defendant in motions to dismiss had argued forcefully that the Court lacked jurisdiction over the Singaporean corporation BTAP, and that it was a distinct and separate entity from BTI. As such, the transferred assets were not property of the Debtor. The Court agrees with Defendant and earlier ruled that BTI and BTAP are separate and distinct entities. *See In re Bernard Technologies, Inc.*, 342 B.R. 174, 180 (Bankr. D. Del. 2006) (". . . the Court cannot ignore the Debtor's and Subsidiary's

---

[6] Defendant twice moved to dismiss the claims relating to the BTAP transfers, which the Court denied on the basis of the liberal standards applicable to motions to dismiss.

separate existence. . ..")*.  See* also, *Amphenol Corp. v. Shandler (In re Insilco Technology Inc.)*, 351 B.R. 313 (Bankr. D. Del. 2006) (basic tenet that corporations are distinct from shareholders even if subsidiary is wholly owned).

The Trustee, in turn, argues that the BTAP transfers were made "on account" of Debtor. The Trustee failed to offer any proof that BTAP transferred money which belonged or should have belonged to BTI. Indeed, the evidence at trial leads to a contrary finding. Defendant performed services for BTAP as a separate entity. Defendant served as a director of BTAP (Tr. at 46) and was compensated by BTAP for services to BTAP. *Id*. Accordingly, the claims involving the BTAP transfers are dismissed.

## C. Insolvency

The Trustee's claims are predicated on the Bankruptcy Code and a preliminary and integral requirement is a finding that BTI was insolvent at the time of the transfers. Defendant does not challenge BTI's insolvency in the 90 days preceding the Petition Date, and there is a presumption of insolvency during that period. 11 U.S.C. § 547(f). Defendant does, however, dispute that BTI established insolvency between 91 days and the year preceding the Petition Date. The Trustee did not offer an insolvency report or expert testimony, instead relying on BTI's books and records and the testimony of Ms. Colleen Kelly of the Giuliano Miller & Company accounting firm. The Trustee is a partner in the firm. Ms. Miller testified that BTI was insolvent during the year before the Petition Date. Ms. Miller based her testimony upon a review of BTI's financial documents. The documents consisted of the trial balance for BTI as of December 26, 2004 (Px 7) and, the general ledger

as of December 31, 2004 (Px 3), which Ms. Smith utilized to create a month-by-month summary of BTI's financial status (Px 9). The testimony and analysis established that on an accounting basis, BTI was insolvent in the year preceding the Petition Date.[7] Defendant established that the Debtors' financial analysis does not take into account BTI's intellectual property (Tr. at 85). Defendant did not, however, introduce evidence of the value of such property.[8]

Ms. Kelly presented competent testimony establishing that on the books Debtor was insolvent at the time of each transfer. Ms. Kelly prepared a month-by-month trial balance based upon Debtor's general ledger for the period May 2004 through December 31, 2004 (TR. at 72-76). The result of Ms. Kelly's work was produced in a document entitled "Bernard Technologies, Inc., Balance Sheet Summary" (Px 9). BTI's book losses for the period were as follows:

| Date | Amount | Date | Amount |
| --- | --- | --- | --- |
| May 2004 | $ 737,824.52 | September 2004 | $1,289,803.83 |
| June 2004 | $1,806,670.59 | October 2004 | $1,299,883.83 |
| July 2004 | $1,141,606.79 | November 2004 | $1,324,803.83 |
| August 2004 | $1,205,864.81 | December 2004 | $1,326,803.83 |

---

[7] BTI's exhibits were prepared without the benefit of source documents. The Court accepts their accuracy with some trepidation, but there is no reason to suspect that Debtor did not maintain accurate financial records. Defendant did not refute their accuracy.

[8] Defendant objected to the introduction of Trustee's exhibits at trial on the ground that the Trustee did not produce them in discovery. Although the Court was troubled by the Trustee's failure, the exhibits were work products from documents equally available to Defendant. Had the Court excluded the evidence the Trustee could have established the evidence but in a less useful manner.

The Trustee also introduced evidence through Ms. Kelly's testimony that Debtor's equity decreased each month from a negative $1,291.680.28 at May 31, 2004, to negative $1,898,659.59 at December 31, 2004 (Px 8). Against these losses, the claims filed against Debtor's estate exceed $13 million. Tr. at 82.

The Trustee established a *prima facie* case of insolvency, as was his burden. It is equally clear that Defendant's only rebuttal to Debtor's insolvency evidence was his point that the Debtor had not considered the value of the intellectual property. Tr. at 85. Defendant did not, however, introduce evidence of the significance, if any, of not valuing the intellectual property.

The test for insolvency begins with Section 101(32)(A) of the Bankruptcy Code which defines "insolvent" as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation." 11 U.S.C. § 101 (32)(A). Here, the Debtor's proof of insolvency rested solely upon the balance sheet through the use of Generally Accepted Accounting Principles, i.e., "GAAP." The Trustee's analysis did not take into account the value of the Debtor's assets, specifically the fair market value of such assets. The Trustee did not make any adjustment to the balance sheet to account for assets, particularly the value of the Debtor's intellectual property.

The Trustee's failure to account for Debtor's assets in the insolvency analysis is problematic. In *Lids Corp. v. Marathon Investment Partners, L.P., (In re Lids Corp.)*, 281 B.R. 535 (Bankr. D. Del. 2002), this Court faced competing insolvency analyses in avoidance litigation. The Court explained that:

8

> This standard for solvency [i.e., Section 101(32)(A)] is typically called the "Balance Sheet Test." *In re Trans World Airlines, Inc.*, 180 B.R. 389, 405 n. 22 (Bankr. D. Del. 1994). However, this may be a misnomer because the Balance Sheet Test is based on fair valuation and not based on Generally Accepted Accounting Principles ("GAAP"), which are used to prepare a typical balance sheet. *Id.*

*Lids*, 281 B.R. at 540.

As *Lids* makes plain, a solvency analysis requires asset valuation. The Trustee did not value Debtor's assets.

The difficulty the Court confronts is that the Trustee has the benefit of a presumption of insolvency, at least for the 90 days prior to the Petition Date. The Trustee did establish that Debtor was unable to meet its obligations as they came due. The burden therefore shifted to the Defendant to prove solvency. And Defendant did not establish that Debtor was solvent and did not introduce any evidence of the value of Debtor's assets. Accordingly, the Court can only conclude based on the magnitude of Debtor's losses in the record that Debtor was insolvent at the time of the transfers.

### D. The Transfers

The Court has found with reservation that the Trustee barely has satisfied the required proof of insolvency at the time of the Transfers. The Trustee has failed to establish by a preponderance of the evidence that the Transfers constitute avoidable transfers. The Court has already discussed the BTAP transfers and has dismissed them on the basis of applicable law as well as the law of the case doctrine. Only the BTI transfers remain to be decided.

Defendant credibly testified that:

- His annual compensation was $250,000. Tr. at 104, Dx 2.

- He received only $84,000 in gross compensation in 2004. Tr. at 105, Dx 3.

- For the period ended June 30, 2004, he received compensation of $12,000, less than his full contractual entitlement of $20,833.33 per month. Tr. at 110. Defendant agreed to the reduction and received $12,000 per month for every month beginning December 1, 2003, through July 2004. He received no compensation beginning August 2004 through the Petition Date. Tr. at 110-14.

- Defendant made a series of loans to Debtor and received promissory notes in exchange. The loans were as follows:

| Date | Amount | Date | Amount |
|---|---|---|---|
| February 14 | $32,000.00 | April 30 | $11,000.00 |
| February 14 | $29,100.00 | May 3 | $ 6,000.00 |
| February 24 | $10,000.00 | May 5 | $ 4,500.00 |
| March 10 | $13,100.00 | May 14 | $ 8,000.00 |
| March 15 | $ 2,000.00 | May 17 | $ 3,000.00 |
| March 24 | $ 8,000.00 | May 19 | $ 2,100.00 |
| March 31 | $11,000.00 | May 20 | $    500.00 |
| April 1 | $40,000.00 | June 16 | $24,244.55 |
| **TOTAL LOANS -  $204,544.55** | | | |

Defendant testified that he never received repayment of the loans. Tr. at 116-126.

10

The Trustee did not successfully rebut Defendant's testimony on cross-examination or introduce any direct rebuttal evidence. The Court is satisfied, based on its observation of Defendant's demeanor and the strength of Defendant's testimony that BTI's transfers are not avoidable. Excluding the BTAP Transfers,[9] there are five transfers to Defendant at issue.

| Date | Amount | Description |
|---|---|---|
| May 11, 2004 | $ 3,938.13 | Expense Reimbursement |
| July 1, 2004 | $ 5,253.42 | Loan Repayment |
| July 8, 2008 | $ 14,500.00 | Loan Repayment |
| September 23, 2004 | $ 5,000.00 | Loan Repayment |
| December 26, 2003 - December 26, 2004 | $108,000.00 | Wages |

Each of the transfers with the exception of the loan repayment is a payment made in the ordinary course - wages and reimbursements. The loan repayment constitutes new value on the facts of this case. Defendant's contractual compensation was $250,000 per year, which he voluntarily reduced to $144,000 per year. Despite the reduction, Defendant did not receive wages for the four months of August through November and 23 days of December, for a total unpaid amount of $57,200. As a result, Defendant contributed new value of $57,200.00 against the receipt of $19,753.42 (the total of the loan repayments).

---

[9] The Court has ruled that the Trustee does not have the right to challenge the BTAP transfers. The evidence relating to those transfers would, however, lead the Court to the same conclusion, i.e., they are not avoidable transfers.

## V. CONCLUSION

In hindsight, the Court should have granted the Defendant's motion to dismiss but, instead, and correctly at the time, determined that the Trustee had made a sufficient showing to entitle him to a decision on the merits of the case. The Trustee has now had a full opportunity to present his case against the Defendant. The Court has given the Trustee wide latitude, particularly on the insolvency issue and still concludes without hesitation that the Trustee has not established that Defendant received any avoidable payments. Accordingly, the Court will grant judgment in favor of Defendant by separate order.

Dated: December 5, 2008

_____
KEVIN GROSS, U.S.B.J.